IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **PAUL WILLIAM DRIGGERS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **Civil Action No. 3:11-CV-0229-N** |
| | § | |
| **UNITED STATES OF AMERICA, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

<u>**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**</u>

Pursuant to Special Order No. 3-251, this case has been automatically referred for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions. Before the Court are *Defendants' Motion for Summary Judgment*, filed July 14, 2011 (doc. 30), and *Plaintiff's Cross-motion for Summary Judgment as to Defendants Executive Office of United States Attorneys, Dept. of Justice*, filed August 4, 2011 (doc. 36). Based on the relevant filings, evidence, and applicable law, Defendants' motion should be **GRANTED,** and Plaintiff's cross-motion should be **DENIED**.

## I. BACKGROUND

Paul William Driggers, a federal inmate ("Plaintiff"), sues the United States of America, the Criminal Division of the U.S. Department of Justice (CMD), the Executive Office of the United States Attorneys (EOUSA), and the Federal Bureau of Investigation (FBI) (collectively Defendants), under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 *et seq.* (doc. 1 at 1.) He seeks documents withheld in response to his FOIA requests that concern his criminal conviction, his claim of actual innocence, and jurisdictional issues with respect to the grand jury proceeding in his criminal case. (*Id.*)

**A.  First FOIA Request**

Plaintiff submitted his first FOIA request to FBI's Idaho field office by letter dated July 21, 2010.  (doc. 32 at 4-5, 32-34.)  The letter sought "documents that indicate[d] the ultimate sentence of Matthew Robinson for his alleged acts of bank robbery, by either the State of California or the United States of America, but only in connection with an agreement pertaining to [Plaintiff] case and his testimony therein.  Also seeking documents referencing [Plaintiff's] name that were developed and recorded of a miscellaneous nature filed by your Office on or after March 1, 2007, in any way connected to Matthew Robinson."  (*Id.*)

On April 19, 2010, the FBI acknowledged Plaintiff's request and assigned it case number 1151778-000.  (*Id.* at 5-6, 35-38.)  The FBI interpreted Plaintiff's request as a request for third party records, and advised him that records pertaining to a third party generally cannot be released absent express authorization and consent of the third party, proof of the third party's death, or a clear demonstration that the public interest in disclosure outweighs the personal privacy interest and that public benefit would be significant.  (*Id.*)  The FBI enclosed a form for Plaintiff to obtain the consent of the third party, advised him that he could receive public records maintained in the FBI's files, instructed him to request the public records within thirty days or risk having his request closed, and notified him of his right to appeal its decision to the DOJ Office of Information and Privacy ("OIP") within 60 days.  (*Id.*)

Plaintiff appealed the denial of the information to the OIP by letter dated August 16, 2010.  (*Id.* at 6, 39-40.)  The OIP acknowledged receipt of the appeal by letter dated August 29, 2010, and assigned it appeal number 2010-3043.  (*Id.* at 6, 41-42.)

**B.  Second FOIA Request**

Plaintiff submitted his second FOIA request to the EOUSA by letter dated July 22, 2010, which requested:

> transcripts, wherever located, that are: (1) [t]rue, correct, and complete copies of the transcripts kept by your department pertaining to the above case, the Grand Jury Investigation, and the above individual; (2) [a]ny and all other data, files, information in the Grand Jury file in any form (i.e., paper, electronic, etc.) pertaining to the said individual.

(doc. 1 at 18.)  EOUSA acknowledged the request, assigned it request number 2010-2835, and denied the request on the basis of 5 U.S.C. § 552(b)(3) and Federal Rule of Criminal Procedure 6(e). (*Id.* at 20.)  Plaintiff then submitted two separate, identical appeals, dated October 27, 2010 and November 10, 2010, to the OIP concerning the EOUSA's denial of his request.  (*Id.* at 20-23.)  On December 22, 2010, the OIP informed Plaintiff that it had affirmed EOUSA's denial of release and would be closing both of his appeals.  (*Id.* at 24.)

**C.  Third FOIA Request**

Plaintiff submitted his third FOIA request to the FBI by letter dated July 28, 2010, "seeking any documents on file in connection with" criminal informant Matthew Robinson's purported reduced sentence and Plaintiff.  (doc. 32 at 6, 43-45.)  The FBI acknowledged receipt of his request on August 10, 2010, and assigned it request number 1151755-000.  (*Id.* at 6, 46-47.)  By letter dated November 2, 2010, the FBI informed Plaintiff that his request was being reviewed by an analyst to determine what records were responsive to his request and to apply any applicable FOIA exemptions.  (*Id.* at 7, 50-51.)  By letter dated November 22, 2010, the FBI responded to Plaintiff's FOIA request stating that a total of 56 pages were identified and reviewed, and 44 would be released to Plaintiff.  (*Id.* at 7, 52, 106.)

Plaintiff brought this action against Defendants on February 4, 2011.  Defendants now move for summary judgment on Plaintiff's FOIA claim, and Plaintiff cross-moves for summary judgment in his favor.  The motions are now ripe for consideration and will be considered together.

## II.  ANALYSIS

Defendants move for summary judgment on Plaintiff's FOIA claim on the grounds that they have performed an adequate search for documents responsive to his FOIA requests and have released all reasonably segregable, non-exempt records pertaining to those requests.

### A.  Summary Judgment in the FOIA Context

The FOIA embodies a philosophy of full disclosure by government agencies and requires them to make their records available to the public.  5 U.S.C. § 552; *Halloran v. Veterans Admin.*, 874 F.2d 315, 318 (5th Cir. 1986).  Many of these records must be published in the Federal Register; the rest may be requested from an agency.  5 U.S.C. § 552(a).  Upon receipt of a request for records, an agency must make the requested records promptly available to the requesting party, unless the records fall under one of nine exemptions listed in the FOIA.  *Id.* § 552(a) & (b).  The agency, moreover, must disclose any "reasonably segregable portion of a record" after deletion of the exempt portion of the record.  *Batton v. Evers*, 598 F.3d 169, 178 (5th Cir. 2010) (citing *id.* § 522(b)).  An agency has the burden of proving that particular documents or portions thereof are exempt from disclosure.  *Sharyland Water Supply Corp. v. Block*, 755 F.2d 397, 398 (5th Cir. 1985).  If an agency improperly withholds agency records, a district court has jurisdiction to enjoin it from withholding those records and to order their production. 5 U.S.C. § 552(a)(4)(B); *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 143 (1989).  An agency record is "improperly" withheld if it does not fall within one of the nine exemptions enumerated in the FOIA.  *See Tax Analysts*, 492 U.S. at 150-51.

4

Generally, summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This standard is modified in the FOIA context, however, because "the threshold question in any FOIA suit is whether the requester can even see the documents the character of which determines whether they can be released." *Batton v. Evers*, 598 F.3d 169, 175 (5th Cir. 2010) (citing *Cooper Cameron Corp. v. U.S. Dep't of Labor, OSHA*, 280 F.3d 539, 543 (5th Cir. 2002)). The FOIA expressly places the burden on the defending agency to sustain its action and show that it acted in accordance with the statute. *See Batton*, 598 F.3d at 175; *Cooper Cameron*, 280 F.3d at 543. To meet its summary judgment burden, the agency must demonstrate that its search for the requested material was adequate and that any withheld material is exempt from disclosure. *See Cooper Cameron*, 280 F.3d at 543.

The agency may meet its burden based on affidavits or declarations that are entitled to a "presumption of legitimacy," or a so-called *Vaughn* index.[1]  *See Batton*, 598 F.3d at 176; *Cooper Cameron*, 280 F.3d at 543, *Hussain v. U.S. Dep't of Homeland Sec.*, 674 F.Supp. 2d 260, 267 (D.D.C. 2009). "The presumption of legitimacy, however, does not relieve the withholding agency of its burden of proving that the factual information sought falls within the statutory exemption asserted." *Batton*, 598 F.3d at 176 (citing *Stephenson v. IRS*, 629 F.2d 1140, 1145 (5th Cir. 1980)). An affidavit or declaration does not suffice if it merely recites statutory standards, or of it makes conclusory, vague, or sweeping assertions. *Cooper Cameron*, 280 F.3d at 543. "[B]ecause the burden to establish an exemption remains with the agency, the district court should not grant

---

[1]  The vaughn index is named after the case of *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), and is "a routine device through which the agency describes the documents responsive to a FOIA request and indicates the reasons for redactions or withholdings in sufficient detail to allow a court to make an independent assessment of the claims for exemptions." *See Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 544 (6th Cir. 2001).

summary judgment based on a 'conclusory and generalized' assertion, even if the FOIA requester has not controverted that assertion." *Id.* (quoting *Niagara Mohawk Power Corp. v. U.S. Dep't of Energy*, 169 F.3d 16, 18 (D.C. Cir. 1999)).

## B. Adequacy of the Searches

Defendants first argue that their search for responsive documents constituted an adequate search. "An agency may demonstrate that it conducted an adequate search by showing that it used 'methods which can be reasonably expected to produce the information requested.'" *Batton*, 598 F.3d at 176 (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). "'The issue is not whether other documents may exist, but rather whether the search for undisclosed documents was adequate.'" *Id.* (quoting *In re Wade*, 969 F.2d 241, 249 n.11 (7th Cir. 1992)).

Defendants submit the declaration of David M. Hardy, Section Chief of FBI's Record/ Information Dissemination Section, Records Management Division, in Winchester, Virginia, to show that the FBI's search regarding Plaintiff's FOIA request number 1151755-000 was adequate. (doc. 32 at 3-31.) According to the declaration, the FBI searched the indices in its Central Records System to identify all potentially responsive files indexed to "Paul Williams Driggers," and used his date of birth to facilitate the identification of requested records. (*Id.* at 14.) Such a search, the declaration explains, would locate all records using the phonetic sounds of the last, middle, and first names of the name "Paul Williams Driggers." (*Id.*)

Defendants also submit the declaration of Rafael M. Gonzalez Jr., the First Assistant United States Attorney for the District of Idaho, to show the adequacy of EOUSA's search for grand jury records sought in Plaintiff's FOIA request number 2010-2835. (doc. 43 at 4-6.) Gonzalez states that he retrieved Plaintiff's criminal case file from a closed file room within the United States Attorney's

6

main office in Boise, Idaho, which is the designated repository for all closed files in that district. (*Id.* at 4.)   He explains that the criminal file consisted of two standard-sized boxes labeled "Driggers" that contained the district court criminal file, numerous pieces of paper, most with sub-folders, CDs and DVDs of discovery and audio recordings, the appeal, and the transcript from the first trial. (*Id.* at 5.) Gonzalez states that he found two copies of a ten-page grand jury transcript of the complete grand jury presentation, in a sealed manilla folder in the two boxes. (*Id.* at 5-6.) He also contacted the branch office in Coeur d' Alene, Idaho, where the case was indicted, but was only able find a copy of the same grand jury transcript that was in the closed criminal file. (*Id.* at 6.)[2]

The declarations submitted by Defendants sufficiently demonstrate that the searches with respect to Plaintiff's FOIA requests were reasonably calculated to yield responsive records and were therefore adequate searches.  Notably, Plaintiff does not dispute the adequacy of the searches, and only seeks judicial review of whether Defendants properly withheld documents as exempt.

## C. Claimed Exemptions

Defendant next argues that the withheld material is exempt under FOIA exemptions (b)(2), (b)(3), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E).  As discussed, the FBI found 56 pages responsive to FOIA request number 1151755-000 for records relating to Plaintiff and criminal informant Robinson, but only released 44 of those pages with redactions.  Additionally, the EOUSA withheld the grand jury material responsive to FOIA request number 2010-283 in its entirety.  Defendants explain that the redacted and withheld material consists of: FBI's internal telephone numbers; grand jury transcripts and records; names and identifying information of FBI special agents, third parties

---

[2]  The adequacy of a search related to FOIA request number request 1151778-000 is not at issue here. Defendants did not conduct the search because the request sought third party records relating to criminal informant Matthew Robinson without providing the necessary privacy waiver form, proof of death, or a clear demonstration that the public interest in disclosure outweighed the personal privacy interest and that public benefit would be significant.

who have provided information to the FBI, state law enforcement employees, third party victims, and non-FBI federal employees; names and identifying information of individuals who have provided the FBI with information under an implied agreement of confidentiality; and "World Wide Web," "www" internet protocol, and email addresses assigned to individual FBI employees. To show that the material is exempt, Defendants submit a *Vaughn* index consisting of the Hardy declaration and the redacted copies of the 56 pages responsive to FOIA request number 1151755-000. The declaration explains in reasonable detail why the redacted and withheld material is exempt, and the applicable exemptions are noted in a very specific manner on each redacted portion of the material released and on the withheld pages.

1. Exemption (b)(2)

Section 552(b)(2) exempts from disclosure information "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). "This exemption applies to routine matters of merely internal significance in which the public lacks any substantial or legitimate interest, as well as internal agency matters of some public interest where disclosure may risk circumvention of agency regulation or of the law." *McQueen v. United States*, 264 F. Supp. 2d 502, 528 (S.D. Tex. 2003) (citing *Dep't of Air Force v. Rose*, 425 U.S. 352 (1976); *Nat'l Treasury Employees Union v. U.S. Customs Serv.*, 802 F.2d 525, 528-30 (D.C. Cir. 1986)).

Defendants have invoked this exemption to protect the internal telephone numbers of FBI personnel. (*See* doc. 32 at 18, 83, 89, 92.) They correctly point out that FBI personnel use their work telephones for significant national security and criminal investigations and are of no significance to the public. Disclosure of these telephone numbers therefore could subject them to harassing and disruptive telephone calls. Given these facts, Defendants have properly withheld this

information under exemption (b)(2).  *See Russell v. FBI*, 2004 WL 5574164, at * 4 (D.D.C. Jan. 9, 2004) ("Disclosure of FBI personnel telephone numbers serves no public interest and could lead to harassment").

2. Exemption (b)(3)

FOIA exemption (b)(3) exempts from disclosure any documents "specifically exempted from disclosure by statute" if the statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3).  The exemption applies if a withholding statute exists and the withheld document falls within the coverage of that statute. *Perry-Torres v. U.S. Dep't of State*, 404 F.Supp.2d 140, 142 (D.D.C. 2005) (hereinafter "*Perry-Torres I*").  In this case, Federal Rule of Criminal Procedure 6(e) prohibits certain persons, including government attorneys, from disclosing any "matter occurring before the grand jury."  Fed. R. Crim. P. 6(e)(2)(B).[3]  Rule 6(e), however, is not a *per se* rule against disclosure of all information brought before the grand jury.  *Sanders v. Obama*, 729 F.Supp. 2d 148, 155 (D.D.C. 2010) (citing *Senate of Puerto Rico ex rel. Judiciary Comm. v. U.S. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987)). The touchstone is whether disclosure of the information sought would "tend to reveal some secret aspect of the grand jury's investigation" such as "the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like."  *Senate of Puerto Rico*, 823 F.2d at 582.  Information coincidentally before the grand

---

[3]  The rule qualifies as a statute because it has been "positively enacted by Congress."  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1113 (D.C.Cir. 2007). Under the rule, grand jury information is protected from disclosure even after the investigation has been concluded, and the criminal defendant convicted. *McQueen v. United States*, 264 F. Supp. 2d 502, 514 (S.D. Tex. 2003).

jury that does not reveal its inner workings can be revealed.  *See id.*

Defendants have invoked exemption (b)(3) to justify their withholding of the grand jury transcript responsive to FOIA request number 2010-283.  The grand jury transcript is exempted from disclosure under Rule 6(e) because it would reveal the inner workings of the grand jury.  *Sanders*, 729 F.Supp. 2d at 156. As one court put it, "a grand jury transcript itself epitomizes the sensitive details of the proceedings that Congress sought to keep protected." *See id.*[4]

3. Exemptions (b)(6) and (b)(7)(C)

Exemption (b)(6) of the FOIA provides that an agency need not disclose "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Exemption (b)(6) is not only intended to include medical and personnel files, but also "*all private or personal information contained in other files*, which if disclosed to the public, would amount to a clearly unwarranted invasion of the privacy of any person." *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 n.3 (1982) (emphasis added).  Exemption (b)(7)(C) exempts from disclosure "records or information compiled for law enforcement purposes . . . [that] could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C).  Whether disclosure is warranted under the two exemptions depends not on the particular purpose for which the document is requested, but on the nature of the document requested and its relationship to the basic purpose of the FOIA to open agency action to the light of public scrutiny.  *See Batton*, 598 F.3d at 180 (citing *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 772 (1989); *Avondale Indus., Inc. v. NLRB*, 90 F.3d

---

[4]  Plaintiff argues that the Jenck's Act, 18 U.S.C. § 3500, requires production of the grand jury records.  The Jenck's Act, however, is not applicable here because it governs the production of statements and reports of prosecution witnesses during federal criminal trials and does not govern production of information pursuant to FOIA.

955, 960 (5th Cir. 1996)).

Defendants have asserted these exemptions to withhold names and identifying information of FBI special agents, third parties who have provided information, state government employees, third parties merely mentioned, state law enforcement employees, third party victims, and non-FBI federal employees. (*See* doc. 32 at 22-27, 56-61, 66-70, 72, 82-84, 87-92, 95-97, 101, 102-06.) This is exactly the type of information subject to the protection of exemption (b)(6). *See Patterson v. IRS*, 56 F.3d 832, 836 n.5 (7th Cir. 1995) (all information applying to a particular individual meets the threshold requirement for exemption (b)(6)). The privacy concerns of revealing this personal third party information is significant, even if Plaintiff already knows the redacted information. *See Cano v. DEA*, 2006 WL 1441383, at *3 (D.D.C. May 24, 2006). The public interest, on the other hand, is non-existent because Plaintiff is seeking this information to prove that he was wrongfully convicted. The fact that the FBI's denial of his request may hinder his efforts to challenge his conviction is irrelevant because "courts have consistently refused to recognize any public interest in disclosure of information to assist a convict in challenging his conviction." *Pugh v. FBI*, --- F. Supp. 2d ----, 2011 WL 2474026, at **2-5 (D.D.C. June 23, 2011) (quoting *Burke v. U.S. Dep't of Justice*, 1999 WL 1032814, at *4 (D.D.C. Sept. 30, 1999)).

Plaintiff argues that the public has an interest in the disclosure of this information because it will show that the government failed to disclose a leniency agreement between itself and criminal informant Robinson in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972). He alleges that Robinson received an unusually light sentence for his numerous felony convictions, including at least one bank robbery conviction. Even if Plaintiff has alleged a public interest in disclosure of government misconduct, he "must establish more than a

bare suspicion in order to obtain disclosure" and "must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 174 (2004); *see also McNamera v. U.S. Dep't of Justice*, 974 F.Supp. 946, 960 (W.D. Tex. 1997) (compelling evidence is needed to establish that the agency is engaged in illegal activity and that the information sought is necessary in order to confirm or refute that evidence). An unsupported assertion of government wrongdoing is not sufficient to demonstrate that the public interest sought to be advanced is significant, and that release of the requested information is likely to advance that interest. *Pugh*, 2011 WL 2474026, at *4 (D.D.C. June 23, 2011)

In the absence of evidence of an overriding public interest, the government properly redacted this third-party information pursuant to exemption (b)(6).  Since exemption (b)(6) is applicable to the material at issue, there is no need to determine whether exemption (b)(7)(C) applies.

4. Exemption (b)(7)(D)

Exemption (b)(7)(D) allows an agency to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to disclose the identity of a confidential source . . . and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation . . . information furnished by a confidential source."  5 U.S.C. § 552(b)(7)(D).  Under exemption (b)(7)(D), "the question is not whether the requested *document* is of the type that the agency usually treats as confidential, but whether the particular *source* spoke with an understanding that the communication would remain confidential."  *Dep't of Justice v. Landano*, 508 U.S. 165, 172 (1997) (emphasis in original).  A source is confidential if it "provided

information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." *Id.* An implied assurance of confidentiality cannot be presumed merely because the source provides information in the course of a criminal investigation. *Id.* at 181. If, however, "certain circumstances characteristically support an inference of confidentiality," the government can claim exemption (b)(7)(D) "without detailing the circumstances surrounding a particular interview." *Id.* at 177. For instance, it is reasonable to infer that a paid informant expects his cooperation with the FBI to be kept confidential given the nature of his ongoing relationship with the FBI. *Id.* at 179. Likewise, "[m]ost people would think that witnesses to a gang-related murder likely would be unwilling to speak to the Bureau except on the condition of confidentiality." *Id.* An implied assurance of confidentiality therefore can be implied from the nature of the crime and the source's relation to it. *Id.* at 179-80.

Here, Defendants have invoked exemption (b)(7)(D) to protect the names and identifying information of individuals who allegedly provided the FBI information under an implied assurance of confidentiality. (*See* doc. 32 at 29, 56-58, 60-61, 66, 69, 82, 84, 88.) Defendants explain that these sources provided the confidential information in connection with a murder-for-hire case in which Plaintiff was ultimately convicted and sentenced. (*Id.* at 29.) Defendants correctly argue that given the nature of the case, it is reasonable to assume that these individuals would not have provided information except on the condition of confidentiality. This argument is in line with an authoritative survey of post-*Landano* cases showing that courts have found a categorical presumption of confidentiality in investigations of murder. *See Cooper Cameron*, 280 F.3d at 552 (citing U.S. Department of Justice, Freedom of Information Act Guide & Privacy Act Overview 416-18 (GPO 2000)); see also *McQueen*, 264 F. Supp. 2d at 523. In short, the FBI properly withheld

some of the information under exemption (b)(7)(D).

     5. Exemption (b)(7)(E)

     Section (b)(7)(E) exempts disclosure of records or information compiled for law enforcement purposes which "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(B)(7)(E).

     Defendants have applied this exemption to redact an internet "World Wide Web" or "www" address on an FBI record. (*See* doc. 32 at 30, 90.) Defendants argue that armed with this kind of information, the subjects of an investigation could exploit the FBI's information technology system to gain unauthorized access to view and manipulate data, or otherwise interfere with unclassified www internet protocol and email accounts assigned to FBI employees involved in an investigation, thereby avoiding detection and allowing circumvention of the law. (*Id.* at 30.) Any website information on the FBI record is covered by exemption (b)(7)(E) because it is internal to FBI and would disclose information that might significantly risk circumvention of law. *See Unidad Latina En Accion v. U.S. Dep't of Homeland Security*, 253 F.R.D. 44, 50 (D. Conn. 2008) (reaching same conclusion).

**D. Segregability**

     Even though not a contested issue in this case, Defendants also address the segregability of the withheld documents. As discussed, an agency has an obligation to disclose all non-exempt reasonably segregable portions of a record after deletion of the exempt portions, unless they are inextricably intertwined with exempt portions. 5 U.S.C. § 522(b); *Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). The agency must provide a detailed

justification for the non-segregability of any withheld material without compromising the secret nature of the potentially exempt information.  *See Perry-Torres v. U.S. Dep't of State*, 2006 WL 2844357, at *3 (D.D.C. Sept. 26, 2006).  It may not rely, however, on a conclusory assertion that there is no non-exempt and reasonably segregable material within the withheld documents.  *See id.* at **3-4; *Perry-Torres I*, 404 F.Supp. 2d at 144.

Here, the Hardy declaration states that the FBI has extensively and carefully examined the responsive documents and determined that the information withheld is exempt under the FOIA, and that there is no further reasonably segregable information to be released.  The declaration explains in reasonable detail why the redacted and withheld material is exempt, and the applicable exemptions are noted in a very specific manner on each redacted portion of the material released and on the withheld pages.  Defendants have therefore properly addressed the segregability of the withheld information responsive to FOIA request number 1151755-000.  As to the grand jury transcript responsive to FOIA request number 2010-2835, there is no issue of segregability because the transcript is exempted in full.  *See Sanders*, 729 F. Supp. 2d at 157 n.6 (reaching same conclusion).

### III. RECOMMENDATION

Defendants' motion for summary judgment should be **GRANTED**, Plaintiff's cross-motion for summary judgment should be **DENIED**, and Plaintiff's FOIA action against them should be dismissed with prejudice.

**SO RECOMMENDED** on this 26th day of October, 2011.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

15

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

16